IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO SCOTT LUNA,<br><br>　　　　　　　Petitioner,<br><br>　　vs.<br><br>TIM VIRGA,[1] Warden (A), California State Prison, Sacramento,<br><br>　　　　　　　Respondent. | No. 2:06-cv-00234-JKS<br><br>MEMORANDUM DECISION |

　　　　Petitioner Ricardo Scott Luna, a state prisoner appearing pro se, filed a Petition for Habeas Corpus Relief under 28 U.S.C. § 2254.  Luna is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Sacramento.  Respondent has answered, and Luna has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

　　　　In September 2003 following a trial by jury, Luna was convicted in the Sacramento County Superior Court of Assault with a Firearm (Cal. Penal Code § 245(a)(2)) and being a Felon in Possession of a Firearm (Cal. Penal Code § 12021(a)(1)).  The jury also found true enhancements that Luna personally used a firearm in the commission of the offense (Cal. Penal Code § 12022.5(a), (d) and § 1192(c)(8)), had suffered a prior strike conviction (Cal. Penal Code § 667(a)(1), (b)(i)) and had served three prior convictions for which he served prison terms (Cal.

---

[1] Tim Virga, Warden (A), California State Prison, Sacramento, is substituted for David L. Runnels, Warden, High Desert State Prison.  Fed. R. Civ. P. 25(d).

Penal Code § 667.5(a)).  Luna then pled no contest to Auto Theft (Cal. Vehicle Code § 10851(a)).  The trial court sentenced Luna to an aggregate prison term of 15 years.  Luna timely appealed his conviction to the California Court of Appeal, Third Appellate District, which affirmed his conviction in an unpublished, reasoned decision.[2]  The California Supreme Court summarily denied review without opinion or citation to authority in an unpublished decision on April 20, 2005.  Luna timely filed his Petition for relief in this Court on February 3, 2006.

The facts underlying the conviction, as summarized by the California Court of Appeal, were:

> On March 12, 2003, David Perez, his mother Josie Perez, her boyfriend, Angel Valdez, and [Luna's] ex-wife, Josephine, lived together in Josie Perez's home.  David woke up between 12:30 and 1:00 that morning and saw [Luna] and Josephine in the living room watching television.  David and [Luna] had a brief conversation during which [Luna] agreed not to jump the fence to get access to the house anymore.
> Later that morning, David and his girlfriend, Denise Christian, took Josie to a dialysis appointment.  When they returned to the house, [Luna] and Angel were on the front porch.  David said hello and he and Denise went into the house.
> David and Denise noticed the previously locked door to Josie's bedroom had been broken open.  David went outside to talk to [Luna], but when he got there, [Luna] was walking away.
> David and Angel began to repair the doorframe.  Ten to 15 minutes later, Denise saw [Luna] walk up to the house holding a gun, and as he approached the house, she saw him put a clip in the gun.  She yelled to David and Angel that [Luna] had come back with a gun.  David told Denise to close and lock the front door, which she did.  Angel jumped out the bedroom window, while David and Denise ran out of the house through the garage into the side yard.  They continued toward the front of the house.  When they got to the front of the house, they heard a "boom" and saw [Luna] kicking in the front door.  They ran to the gate in the yard to leave.  As they ran toward the gate, David turned around and saw [Luna] standing by the front door pointing a gun at his back.
> Denise ran to a neighbor's house and called 911.  David ran to the other side of a car parked directly in front of the house.  [Luna] started chasing David around the car.  As he chased, he twice pointed the gun at David with his finger on

---

[2] *People v. Luna*, 2005 WL 318759 (Cal. App. February 10, 2005).

2

the trigger. After [Luna] lowered the gun the second time, David believed [Luna] was just trying to scare him and was not going to shoot him.

[Luna] continued to chase David around the car, with David asking what was [Luna]'s problem. [Luna] responded that David had disrespected him. A neighbor called out that if [Luna] did not stop she was going to call the police. [Luna] pulled back the slide of the gun, ejected a round of ammunition, picked up the ejected round, put it in his pocket and walked away.

[Luna] claimed Josephine told him that David had been molesting their 17-year-old daughter. He wanted to confront David, but Josephine told him not to. The following morning, when David returned from taking his mother to the hospital, [Luna] confronted him about the alleged molestation to which David responded, "she's not a baby" and told [Luna] to "get the fuck out of here." This was the claimed disrespect.

[Luna] claimed he only took the gun to David's house because his brother had convinced him that David might have a gun. [Luna] also claimed he only took the gun out of the waistband of his pants, because he did not want to accidentally shoot himself. After trying to kick in the front door, he noticed Denise and David running away. He approached David with the gun at his side and chased him around the car, yelling about David molesting his daughter. David threw his hands up and asked [Luna] to calm down, at which point [Luna] put the gun away. He denied ever pointing the gun at David.

Josephine denied ever telling [Luna] that David was molesting their daughter and she did not have any reason to believe he was.[3]

## II. GROUNDS RAISED/DEFENSES

In his initial Petition, Luna raised three grounds: (1) the evidence was insufficient to support a verdict of assault with a firearm; (2) he was denied due process because the trial court failed to instruct the jury on brandishing a firearm and counsel failed to request that instruction; and (3) the trial court failed to adequately respond to the jury's questions concerning mere possession of a firearm. Respondent moved to dismiss the Petition on the basis that the second and third grounds were not properly exhausted.[4] Luna filed a Petition to Amend Exhausted Claim in which Luna asserted only his first claim, insufficiency of the evidence to support the

---

[3] *Luna*, 2007 WL 318759 at *1-*2.

[4] Docket No. 6.

3

assault with a firearm verdict.[5]  This Court construed the Petition to Amend as an amended petition raising only the exhausted ground—that the evidence was insufficient to support a conviction of assault with a firearm.[6]  Respondent does not assert any affirmative defense to the Amended Petition.[7]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[10]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

---

[5] Docket No. 12.

[6] Docket No. 16.

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

[8] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

[10] *Early v. Packer*, 537 U.S. 3, 10 (2002).

'unreasonabl[y] appli[ed] clearly established Federal law.'"[11] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[12] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[13] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[14] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[15] Because state court judgments of conviction and sentence carry a presumption of finality and legality, Luna has the burden of showing by a preponderance of the evidence that he merits habeas relief.[16]

---

[11] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[13] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[14] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[15] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[16] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis

(continued...)

In applying this standard, this Court reviews the last reasoned decision by the state court.[17] State appellate court decisions that affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[18]

## IV.  DISCUSSION

Luna contends that, although he was chasing the victim with a gun in his hand, he was merely trying to scare the victim.  Luna also points to evidence indicating that the victim knew Luna was not going to shoot him and merely was trying to scare him, the victim.  Luna further notes that if he, Luna, really wanted to shoot the victim, he could have easily done so.  Based upon these points, Luna argues that the evidence was insufficient to convict him of assault with a firearm.  The California Court of Appeal rejected Luna's arguments, holding:

> "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence that is, evidence that is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation omitted.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]"  [Citation omitted.]
> [Luna] asserts it is not an assault merely to point a gun at someone, unless that is accompanied by some threat.  "To point a loaded gun in a threatening manner at another . . . constitutes an assault, because one who does so has the

---

[16](...continued)
of little more than speculation with slight support").

[17] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[18] *Ylst*, 501 U.S. at 802-03.

> present ability to inflict a violent injury on the other and the act by its nature will probably and directly result in such injury." [Citation omitted.]
>
> Even under [Luna's] definition of what is required for assault with a firearm, there is enough evidence here to support the conviction. As defined by [Luna], assault requires "actions or words that denote the intention coupled with the present ability to use actual violence against the person of another." Here, [Luna] tried to kick in the door of the house, chased David around a car with his finger on the trigger, twice pointing a gun at David. These actions denote an intention to commit violence. That he had a loaded gun in his hands and was at most separated by a car indicates the present ability. [Luna] did more than merely point a gun. His actions were threatening and his attempt now to minimize the threat involved in his actions is unavailing.[19]

As stated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[20] This Court must, therefore, determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[21] Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[22]

---

[19] *Luna*, 2007 WL 318759 at *2-*3.

[20] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. ___, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[21] *Jackson*, 443 U.S. at 318-19.

[22] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

7

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[23] Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[24]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[25] "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[26]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[27]  This is especially true where the highest court in the state has denied review of the lower court's decision.[28]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[29]  "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs

---

[23] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[24] *Jackson*, 443 U.S. at 324 n. 16.

[25] *Juan H. v. Allen*, 406 F.3d 1262, 1275 (9th Cir. 2005).

[26] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[27] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[28] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[29] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

of constitutional dimension.'"[30] It is through this lens that this Court must view an insufficiency of the evidence claim.

Luna misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[31] Luna bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous;[32] a burden Luna has failed to carry.

In this case, the California Court of Appeal, applying the California counterpart to *Jackson*, found that there was sufficient evidence to support a conviction of assault with a firearm as defined in the California statute. This Court is bound by that determination. Consequently, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[33]

## V. CONCLUSION AND ORDER

Luna is not entitled to relief on the ground raised in his Amended Petition.

---

[30] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[31] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[32] 28 U.S.C. § 2254(e)(1).

[33] 28 U.S.C. § 2254(d).

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[34]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[35]

The Clerk of the Court is to enter final judgment accordingly.

Dated: November 22, 2010.

                                                        /s/ James K. Singleton, Jr.
                                                        JAMES K. SINGLETON, JR.
                                                        United States District Judge

---

[34] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[35] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.